**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION**

In re:                                                                Case No. 21-21082-EPK

VOS CRE I, LLC                                              Chapter 11
                                                                       Subchapter 5 Small Business

       Debtor.

_____/

VOS CRE I, LLC,                                            ADVERSARY PROCEEDING
                                                                       Case No. 22-01195-EPK

       Plaintiff,

v.

BBM3, LLC, BRANDEN MUHL, and
JOHN DOES 1–10,

       Defendants,

_____/

## DEFENDANTS BBM3, LLC AND BRANDEN MUHL'S MOTION TO DISMISS ADVERSARY COMPLAINT

Defendants, BBM3, LLC ("**BBM3**") and BRANDEN MUHL ("**Muhl**") (collectively, "**Defendants**"), though their undersigned counsel, and pursuant Fed. R. Bankr. P. 7012(b) and Fed. R. Civ. P. 12(b)(1) and 12(b)(6), move to dismiss the Adversary Complaint [Adv. ECF No. 1] filed by Debtor/Plaintiff, VOS CRE I, LLC ("**Debtor**"), and state as follows:

### I.       SUMMARY OF THE ARGUMENT

Debtor improperly seeks damages and injunctive relief for alleged automatic stay violations by BBM3 and its manager, Muhl (as well as unnamed attorneys whom have not been identified specifically nor served with process in this case). BBM3 initiated collection proceedings in Michigan state court against James Vosotas ("**James**") (including seeking the appointment of a receiver over him), pursuant to a final judgment entered in New York in favor of BBM3 and against

1

James in the amount of $19,380,664.30 plus interest (the "**NY Judgment**"). Debtor admits in its complaint that James has no ownership or membership interest in Debtor, but is simply its "authorized representative"—an unclear phrase that appears to mean that James is acting as Debtor's corporate representative. Moreover, the allegations in the Adversary Complaint and its exhibit show that Defendants were simply attempting to collect against funds due to James to satisfy the NY Judgment against him.

The law is clear that the automatic stay under 11 U.S.C. § 362, which is strictly construed, does not extend to non-debtors absent "unusual circumstances." Debtor does not and cannot allege that such unusual circumstances are present here. Indeed, courts consistently hold that independent actions against non-debtor officers and owners of companies undergoing bankruptcy do not violate the automatic stay. James is even further removed from Debtor, allegedly having no ownership, membership, or creditor interest in Debtor (according to the Debtor). As such, Debtor fails to state a claim for automatic stay violations, let along any sanctions purportedly arising therefrom.

As to Debtor's request for injunctive relief, Debtor's claim fails to present a case or controversy and is moot. This Court clarified in its Order on Motion for Order to Show Cause (the "**Order**") [ECF 170], which *denied* Debtor's Expedited Motion for Order to Show Cause [ECF 159] that was premised on the same alleged automatic stay violations, that no receiver may obtain control of Debtor absent permission from this Court. Defendants were not seeking to obtain control of Debtor in the first place, and the Order memorializes that understanding. *See* [ECF 170]. As such, there exists no live controversy upon which Debtor may seek prospective injunctive relief.

In any event, Debtor fails to state a cause of action for injunctive relief. Specifically, Debtor does not allege that it suffered irreparable harm and that it lacks an adequate remedy at law. Instead, Debtor alleges that its damages consist of attorney's fees, for which there is monetary relief. Debtor

otherwise simply alleges that Defendants' actions caused "delays, distractions and disruptions . . . on the Debtor's reorganization," which is insufficient for injunctive relief.

Accordingly, based on the foregoing and as explained in more detail below, the Adversary Complaint fails to state a cause of action upon which relief may be granted. The Court should therefore dismiss the Adversary Complaint.

## II.    BACKGROUND

### A.  The Adversary Complaint

In November 2021, Debtor filed for protection under Chapter 11 of the Bankruptcy Code. *See* [ECF 1]. Pertinent here, when the Petition was filed, Debtor's assets included $8.5 million held in escrow in Detroit, Michigan, which were proceeds from the sale of a hotel in Michigan. *See* [Adv. ECF 1 at ¶13]. In addition, BBM3 was litigating a claim in New York against James as a result of his breach of a personal guarantee. *See id.* at ¶14. The personal guarantee related to a loan for the purchase of a hotel in Miami Beach, Florida, named the Greystone Hotel. *See id.* at ¶14, n.2. Debtor alleges that "James is the authorized representative of the Debtor," but he "has no direct ownership of or membership interest in the Debtor." *Id.* at ¶8. BBM3 obtained the NY Judgment against James on the personal guarantee, and domesticated the NY Judgment in Michigan. *See id.* at ¶22.

After filing for bankruptcy, Debtor filed an adversary proceeding concerning the turnover of the escrowed funds. *See id.* at ¶18. The action culminated in a court-approved settlement, resulting in the Debtor's share of the escrowed funds ($5,239,000) being released into the Debtor's counsel's trust account. *See id.* at ¶19. The Court denied BBM3's objections to the settlement, finding that BBM3 lacked standing to contest the settlement. *See id.* at ¶21.

Debtor alleges that there were four violations of the automatic stay stemming from BBM3's

actions in Michigan to enforce the domesticated NY Judgment against James. *See id.* at ¶¶22–39. First, Debtor points to a Writ of Garnishment that BBM3 served on M.S. Title Agency, LLC ("**M.S. Title**") to enforce the domesticated NY Judgment against James. *See id.* at Ex. B. M.S. Title answered that it was holding in escrow $8.5 million in accordance with an escrow agreement (the "**Escrow Agreement**"), to which James was one of nine signatories. *See id.* M.S. Title continued that there were two proceedings related to the escrowed funds and that absent a court order, M.S. Title had no obligation to distribute funds to James. *See id.*

Second, Debtor alleges that BBM3 filed a Motion for Appointment of a Receiver over James and a memorandum of law in the Michigan collection action. *See id.* at Exs. D and E. In the memorandum of law, BBM3 disclosed that Debtor, which was one of the parties to the Escrow Agreement, was in bankruptcy proceedings in Florida. *See id.* at Ex. E, p. 31. In addition, BBM3 disclosed that this Court had ordered M.S. Tile to distribute $5,239,000 to Debtor's counsel's trust account. *See id.* BBM3 requested a receiver to preserve James's assets, including his ownership and membership interests in various non-bankrupt corporate entities and the Debtor, in which James caused BBM3 to believe James had an interest and/or right to receive payment. *See id.* at pp. 33–34.

Third, Debtor alleges that BBM3 "served the Escrow Agent that was holding the escrowed funds with the *Request and Order to Seize Property* attached as Exhibit F." *Id.* at ¶36. Exhibit F, however, is a Request and Writ of Garnishment that was served on Cendrowski Corporate Advisors, LLC. *See id.* at Ex. F. Debtor alleges that the Request and Order to Seize Property "purportedly sought to confiscate any property belonging to James that the Escrow Agent was holding." *Id.* at ¶37. Debtor contends that the Request and Order to Seize Property was a "thinly disguised ruse" to take control of the escrow funds. *See id.*

4

Fourth, Debtor alleges that Defendants violated the automatic stay when "they sent a process server to serve papers from the Collection Case on the Debtor's counsel." *Id.* at ¶39.

Based on the foregoing allegations, Debtor attempts to assert two causes of action against Defendants: (1) for sanctions for alleged violations of the automatic stay under 11 U.S.C § 362, and (2) for injunctive relief under Fed. R. Bankr. P. 7065 and Fed. R. Civ. P. 65.

### B. The Court's Denial of Debtor's Motion for Order to Show Cause

On June 24, 2022, Debtor filed an Expedited Motion for Order to Show Cause Why BBM3, LLC and Related Parties Should Not Be Held in Contempt and Sanctioned for Willful Violation of the Automatic Stay by Continuing Efforts to Seize Property of the Estate and Request for Related Relief (the "**Expedited Motion**"), arguing that the Court should issue a show cause order against BBM3 and related parties as a result of BBM3's collection efforts against James in Michigan. [ECF No. 159]. On June 29, 2022, the Court issued the Order denying the Expedited Motion. [ECF No. 170]. The Court denied all relief without prejudice to pursuing the same or similar relief in these adversary proceedings. *Id.* at ¶2. The Court further ordered that

> Consistent with the agreement of the parties on the record, BBM3, LLC, Branden Muhl, Shark Law Offices PLLC, any receiver appointed at the request of any of them, and/or any one acting on behalf of any of the foregoing, must not attempt to obtain, directly or indirectly, corporate and/or management control of the Debtor without first seeking authorization from this Court.

*Id.*

### III.    ARGUMENT

### A. Motion to Dismiss Standard

"To survive a motion to dismiss, a plaintiff's complaint must allege facts sufficient "to state a claim to relief that is plausible on its face." *5200 Enterprises Ltd. v. City of New York*, 22 F.4th 970, 974 n.3 (11th Cir. 2022) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"[T]he plaintiff must plead 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "[T]he court must accept as true all of the allegations contained in a complaint." *Id.* (internal quotations omitted). However, when exhibits to the complaint contradict the allegations of the complaint, the exhibits control. *See Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016) ("A district court can generally consider exhibits attached to a complaint in ruling on a motion to dismiss, and if the allegations of the complaint about a particular exhibit conflict with the contents of the exhibit itself, the exhibit controls.").

**B. Debtor Fails to State a Claim for Automatic Stay Violations as Debtor Does Not Allege "Unusual Circumstances" Warranting Extending the Automatic Stay to Non-Debtor James.**

Pertinent here, 11 U.S.C. § 362(a) "operates as a stay, applicable to all entities, of":

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate[.]

11 U.S.C. § 362(a)(1)–(3). "Notwithstanding its broad scope, the automatic stay generally does not protect non-debtors from litigation for obligations that involve the debtor." *In re Colony Beach*, No. 8:13-BK-348-KRM, 2015 WL 1281825, at *7 (Bankr. M.D. Fla. Mar. 18, 2015); *see also In re Sunbeam Sec. Litig.*, 261 B.R. 534, 536 (S.D. Fla. 2001) ("The law makes clear (and no party disagrees) that the automatic stay provisions of section 362(a) generally are not available to third-party non-debtors."). "[E]xtending a stay to non-bankrupt co-defendants is done rarely, justified

only in 'unusual circumstances.'" *DeWitt v. Daley*, 336 B.R. 552, 556 (S.D. Fla. 2006) (quoting *Parry v. Mohawk Motors of Michigan, Inc.*, 236 F.3d 299, 314 (6th Cir. 2000)). Unusual circumstances include where "there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor," or where a lawsuit seeks "possession or [ ] control over property of the debtor." *In re Sunbeam*, 261 B.R. at 536 (quoting *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986)). "Federal courts also have extended an automatic stay to non-debtor third parties where stay protection was deemed essential to the debtor's efforts of reorganization." *Id.* (collecting cases). In addition, the automatic stay may extend to actions against officers and directors who took actions solely in their corporate capacity, and thus would be entitled to indemnity from the debtor. *See Gulfmark Offshore, Inc. v. Bender Shipbuilding & Repair Co., Inc.*, No. CIV. A. 09-0249-WS-N, 2009 WL 2413664, at *2 (S.D. Ala. Aug. 3, 2009).

By contrast, "[i]t is universally acknowledged that an automatic stay proceeding accorded by § 362 may not be invoked by entities such as sureties, guarantors, co-obligors, or others with a similar legal or factual nexus to the . . . debtor." *In re Colony Beach*, 2015 WL 1281825, at *7 n.31. Thus, courts have refused to extend the automatic stay to co-defendants based on breach of their own duties, *Brent v. Source Interlink Distribution, LLC*, No. 2:14-CV-52-FTM-38DNF, 2014 WL 4162770, at *1 (M.D. Fla. Aug. 21, 2014), and in an action to enforce a charging lien against the membership interest of a non-debtor in a debtor LLC, *In re Nilhan Devs., LLC*, 622 B.R. 795, 803 (Bankr. N.D. Ga. 2020). *In re Nilhan*, which is particularly instructive here, explained that "the automatic stay of acts 'against the debtor' is to be strictly construed." *Id.* In that case, the Court found that "[a]ctions as to the personal membership rights of LLC members are not actions

against the LLC," and thus, by extension, "actions against LLC members, in their individual capacity, do not violate the automatic stay." *Id.*

Here, Debtor fails to allege the presence of unusual circumstances warranting extending the automatic stay to collection actions against James. The allegations do not show that judgments against James in the collection action in Michigan state court would in effect be judgments against Debtor, or that Defendants are trying to reach the Debtor's assets. *See, e.g., Great Am. Ins. Co. v. Glasgow Equip. Serv., Inc.*, No. 17-CV-81109, 2018 WL 3089338, at *2 (S.D. Fla. May 9, 2018) (finding that automatic stay did not extend to non-debtors where "[t]he allegations in the Complaint [did] not demonstrate that there is such identity"). The Michigan collection action is premised on the domesticated NY Judgment against James, individually, stemming from James's breach of his personal guarantee of a loan related to a Florida hotel. [Adv. ECF No. 1 at ¶¶14 n.2, 22–39]. Moreover, Plaintiff alleges that James "has no direct ownership of or membership interest in the Debtor." *Id.* at ¶8. At most, James is acting as Debtor's "authorized representative." *Id.* If the automatic stay does not extend to "sureties, guarantors, co-obligors, or others with a similar legal or factual nexus to the . . . debtor," *In re Colony Beach*, 2015 WL 1281825, at *7 n.31, then it does not extend to James, a mere corporate representative who happens to have had a personal judgment entered against him in favor of BBM3.

In addition, the Writ of Garnishment issued to M.S. Title expressly sought to enforce the domesticated NY Judgment against James **only**. [Adv. ECF No. 1 at Ex. B]. Likewise, Debtor acknowledges that the further request to M.S. Title—not attached to the complaint, despite an allegation to the contrary—"sought to confiscate any property **belonging to James** that the Escrow Agent was holding." *Id.* at ¶37 (emphasis added). Debtor was merely one of nine signatories to the Escrow Agreement, which also included the judgment debtor, James, as well as several non-Debtor

affiliates of James that are not in bankruptcy. *See id.* Furthermore, only a portion of those funds were eventually distributed to Debtor's counsel's trust account. *See id.* at Ex. E, p. 31. Simply because Debtor also had a connection to the escrowed funds does not a mean that the automatic stay precluded Defendants from pursuing other assets that may be due to James individually. *See In re Nilhan Devs.*, 622 B.R. at 803; *see also In re Cole*, 552 B.R. 903, 911 (Bankr. N.D. Ga. 2016) ("In the context of a garnishment proceeding, it is straightforward that the automatic stay applies to the extent the creditor seeks to collect against the debtor, the debtor's property or from property of the estate."). Although Debtor speculates that Defendants aimed to control estate property, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *In re Haley*, 418 B.R. 432, 436 (Bankr. M.D. Fla. 2009) (quoting *Bell Atl.*, 550 U.S. at 555). At most, Debtor's allegations "merely create[] a suspicion [of] a legally cognizable right of action," and thus fail to state a cause of action. *Id.* (quoting *Bell Atl.*, *supra*).

Finally, Debtor does not allege that extending the automatic stay to James is essential to its reorganization. Again, according to Debtor, James is merely a representative, not an owner, member, of Debtor, and Debtor does not allege that James is a creditor of Debtor. [Adv. ECF No. 1 at ¶8]. Moreover, Debtor alleges that "James is authorized by law to **assist** the Debtor in proposing a plan of reorganization." *Id.* at ¶28 (emphasis added). Debtor does not allege how a receiver over James, who is simply assisting in the Debtor's reorganization, could or would thwart reorganization efforts. By Debtor's logic, anyone who owes a separate debt can escape lawful collection proceedings by becoming a "representative" who can "assist" a corporate entity to undergo Chapter 11 reorganization. The automatic stay does not extend so far.

In any event, the Court has already entered the Order, with the agreement of the parties, that "any receiver appointed at the request of any of them, and/or any one acting on behalf of any

of the foregoing, must not attempt to obtain, directly or indirectly, corporate and/or management control of the Debtor without first seeking authorization from this Court." [ECF No. 170 at ¶2]. Thus, this Court has already made clear that any receiver appointed in Michigan would be unable to reach estate assets. This has always been the case even without the Order. Debtor alleges that it "may not use the Debtor's Share unless approved by the Bankruptcy Court after notice and a hearing." [Adv. ECF No. 1 at ¶29]. It is thus unclear how, on the one hand, Debtor is unable to use estate property absent this Court's approval, and on the other hand, Defendants can supposedly take control over of estate property through a receiver over James in Michigan state court.

For these reason, the Court should dismiss the Adversary Complaint *with prejudice*.

### C. Debtor's Injunction Claim Fails to Present a Case or Controversy and is Moot.

"It is axiomatic that federal courts should avoid premature adjudication of abstract or hypothetical disputes." *Ass'n For Child. for Enf't of Support, Inc. v. Conger*, 899 F.2d 1164, 1165 (11th Cir. 1990). Mootness is a related concept, derived "directly from the case or controversy limitation because an action that is moot cannot be characterized as an active case or controversy." *Soliman v. U.S. ex rel. INS*, 296 F.3d 1237, 1242 (11th Cir. 2002). "[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Id.* "Because mootness is a jurisdictional requirement, a federal court must dismiss a moot case." *O'Neal v. United States*, 825 F. App'x 695, 697 (11th Cir. 2020). During a factual attack on subject matter jurisdiction, the Court may consider extrinsic evidence under Rule 12(b)(1) to determine whether there exists a case or controversy. *See Tropical Paradise Resorts, LLC v. JBSHBM, LLC*, No. 18-CV-60912, 2018 WL 4932282, at *3 (S.D. Fla. Oct. 10, 2018), *aff'd sub nom.* 806 F. App'x 966 (11th Cir. 2020) (considering covenant not to sue and declaration under Rule 12(b)(1) to determine whether there remained a case or controversy).

The crux of Debtor's claims in this case is that Defendants are supposedly attempting to wrest control of estate property through the Michigan collection action. As explained above, the collection action did not violate the automatic stay. Regardless, after the Debtor filed the Adversary Complaint, the Court clarified that "any receiver appointed at the request of any of them, and/or any one acting on behalf of any of the foregoing, must not attempt to obtain, directly or indirectly, corporate and/or management control of the Debtor without first seeking authorization from this Court." [ECF No. 170 at ¶2]. Although the Court also declined to issue a show cause order without prejudice to Debtor pursuing the adversary proceeding, the Court's Order effectively eliminated any case or controversy, mooting the need for this adversary proceeding. Moreover, Debtor alleges that the estate property is already in its counsel's trust account (and was already in counsel's trust account before the Order to Show Cause Hearing occurred), [Adv. ECF No. 1 at ¶19], and is therefore out of reach of the garnishee in Michigan.

Accordingly, the Court should dismiss Debtor's injunction claim as lacking a case or controversy and as moot.

**D. Debtor Fails to State a Claim for Injunctive Relief.**

Even if Debtor's injunction claim were to remain pending, it fails to state a cause of action upon which relief may be granted. "[A]ny motion or suit for either a preliminary or permanent injunction must be based upon a cause of action[.]" *Alabama v. U.S. Army Corps of Engineers*, 424 F.3d 1117, 1127 (11th Cir. 2005). "For a traditional injunction to be even theoretically available, a plaintiff must be able to articulate a basis for relief that would withstand scrutiny under Fed. R. Civ. P. 12(b)(6) (failure to state a claim)." *Id.* As shown above, Debtor cannot establish any automatic stay violations; therefore, injunctive relief is not available.

Even if Debtor had established a claim, injunctive relief is not available to the Debtor

because Debtor does not allege that it suffered "an injury for which there is no adequate legal remedy and which will result in irreparable injury if the injunction does not issue." *Alabama v. U.S. Army Corps of Engineers*, 424 F.3d 1117, 1127 (11th Cir. 2005). "A showing of irreparable injury is the sine qua non of injunctive relief." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000). The only injury Debtor alleges it suffered is that it purportedly incurred attorney's fees while raising the automatic stay issue. [Adv. ECF No. 1 at ¶45]. Debtor admits that "sanctions and monetary damages may be sufficient to redress the Debtor's injury from the Defendant's past conduct and stay violations[.]" [Adv. ECF No. 1 ¶51]. Although Debtor also contends that "monetary damages are wholly inadequate to compensate the Debtor for the delays, distractions and disruptions the Defendants' conduct is having on the Debtor's reorganization." (*Id.*), Debtor does not allege (because it cannot) that these supposed "delays, distractions and disruptions" will result it irreparable injury. S*ee Sec. & Exch. Comm'n v. Graham*, 823 F.3d 1357, 1361 (11th Cir. 2016) (explaining that "[i]njunctions . . .typically look forward in time"). Accordingly, Debtor's claim for injunctive relief fails and must also be dismissed.

## IV.    CONCLUSION

**WHEREFORE**, for the foregoing reasons, Defendants respectfully request that the Court dismiss the Adversary Complaint ***with prejudice***, and order such other and further relief in favor of Defendants as the Court deems just and proper under the circumstances.

Respectfully submitted,

**DAVID R. SOFTNESS P.A.**
***Counsel for BBM3, LLC and Branden Muhl***
201 South Biscayne Boulevard
Suite 2740
Miami, FL 33131
Tel: 305-341-3111
Email: *david@softnesslaw.com*

*/s/ David R. Softness*
**David R. Softness, Esq.**
Florida Bar No.: 513229

*and*

**KLUGER, KAPLAN, SILVERMAN,**
**KATZEN & LEVINE, P.L.**
***Co-Counsel for BBM3, LLC and Branden Muhl***
201 S. Biscayne Blvd.
Twenty-Seventh Floor
Miami, Florida 33131
Telephone: (305) 379-9000
Facsimile: (305) 379-3428

By: */s/ Todd A. Levine*
**Todd A. Levine, Esq.**
Florida Bar No.: 899119
*tlevine@klugerkaplan.com*
**Ryan J. Bollman, Esq.**
Florida Bar No.: 93553
*rbollman@klugerkaplan.com*
**Becky N. Saka, Esq.**
Florida Bar No.: 1010315
*bsaka@klugerkaplan.com*

13

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that the pleading above was filed electronically on the date indicated and served via CM/ECF upon all parties entitled to electronic notice and by email upon Plaintiff/Debtor, by serving Isaac Marcushamer, Esq. at *isaac@dgimlaw.com* and Daniel Y. Gielchinsky, Esq. at *dan@dgimlaw.com*.

*/s/ David R. Softness*
**David R. Softness, Esq.**